[No. 7824.]

## THE FARMER'S IRRIGATION COMPANY V. KAMM.

1. MECHANIC'S LIENS—*For What Material a Lien is Given*—Only for what is furnished to be wrought into the structure, or to become a part of it, or to be consumed in the work of improvement (Rev. Stat. § 4025).

A sub-contractor agrees to perform the work of excavation for the enlargement of a ditch. His purchases of lumber, nails, and the like, no more give a lien upon the ditch than would the purchase of tools, machinery or animals used in the work.

2. ——*Sub-Contractor's Authority*—The statute (Rev. Stat. § 4025) constitutes the sub-contractor, agent for the owner, but not his general agent for the improvement of the owner's property. The agency is a special one limited to the procurement of material reasonably necessary and sufficient to go into the structure, according to the terms of the contract. Those who deal with the sub-contractor must take notice of the contract, and of what, according to its terms, is to go into the structure.

*Error to Garfield District Court.*—Hon. JOHN T. SHUMATE, Judge.

Mr. JAMES R. MOORE, for plaintiff in error.

Mr. JOHN L. NOONAN, Mr. J. M. DOLLISON, for defendant in error.

CHIEF JUSTICE MUSSER delivered the opinion of the court:

By this writ of error it is sought to review a judgment of the district court, decreeing a mechanic's lien upon the ditch and reservoir of plaintiff in error. The evidence is not incorporated into the record. The defendant in error claimed a lien on account of materials furnished to one Harris, a subcontractor. That the materials were furnished is not denied. The only question raised is the validity of the lien. The plaintiff in error claims that its validity sufficiently appears from the record proper. The question as presented to this court, therefore, is a demurrer to the complaint upon the ground

that it does not state facts sufficient to constitute a cause of action against the plaintiff in error.

The defendants named in the complaint were C. G. Harris, Harry Hokasona, The Antlers Orchard Development Company and The Farmer's Irrigation Company, the latter being the plaintiff in error. The action was dismissed as to the Orchard Development Company and as to Hokasona. The complaint alleges that Hokasona entered into a written contract to build up the banks of the ditch and to enlarge the dam of the reservoir; that Hokasona subcontracted all of the work to the defendant Harris by written contract, which is set out in the complaint. In this contract, it was recited that Hokasona had entered into the contract to enlarge about eight miles of the ditch, to build up its bank with material taken from it and to enlarge the dam of the reservoir belonging to the plaintiff in error; that Hokasona was desirous of subletting the work to Harris; that he did thereby sublet all of the work upon the ditch, dam and reservoir to Harris, and the latter agreed to perform it. The contract also stated that the estimated amount of earth to be removed from the ditch was 45,000 cubic yards, and the estimated amount of earth work on the dam was 90,000 cubic yards. Hokasona was to furnish an engine for pulling the grader, an earth elevator and dump wagons, and the Antlers Orchard Development Company was to furnish rollers and sprinklers for use upon the dam, and was to spread the material as delivered. Harris was to be paid twenty cents per cubic yard for all earth work on the ditch, seventy cents per cubic yard for rock work, and nineteen cents per cubic yard for earth material removed for the enlarging of the dam, and the contract specifically stated "that second party's (Harris') work in connection with the enlarging of said dam is the moving of the earth material therefor." After setting out the contract, the complaint continues

and alleges that subcontractor Harris purchased from plaintiff, for use in, upon and about the construction of the said work, "a large amount or quantity of material consisting of lumber, nails, lath, wire, tar-paper, and other hardware and materials;" that Harris, as such subcontractor, purchased from another, for use in, upon and about the construction of said work, 6,862 feet of lumber, the claim for which was assigned to plaintiff. The complaint then goes on and recites that a mechanic's lien statement was filed and concludes with other allegations necessary in such an action.

It is plain from this complaint that Harris was to perform work, only, upon the ditch, reservoir and dam by removing earth therefrom and placing it, or some of it, upon the dam. He was not to furnish any materials that would enter into the construction. Under his contract with Hokasona, he could have no use for lumber and such materials as are specified in the complaint, for which the lien is claimed, so far as putting those materials into the structure is concerned, and, according to the complaint, it was only his contract with Hokasona that he was performing. The only sense in which those materials can be said to have been used in the construction of the ditch and dam, under Harris' contract, is the same sense in which it might have been said that the dump wagons were used, or that it might have had said that other appliances are used in the performance of work. For instance, the lumber and other material sold by the plaintiff may have been bought to be used for building temporary sheds and bunk-houses for the animals and men employed upon the work, and in that sense may be said to have been furnished to be used in the construction of the ditch and dam. In no other sense can it be said that Harris could have used them in the performance of his contract, according to the allegations of the complaint, or that they were to be used in

the construction of the ditch and dam.  That, however, is not the sense in which materials are to be used in the construction of a building, ditch or other structure in order that a material-man may have a lien therefor.  The statute (Sec. 4025 Rev. Stat. 1908) provides that (mechanics, material men, contractors, subcontractors, and all persons of every class performing labor upon or furnishing materials to be used in the construction, alteration, addition to, or repair, either in whole or in part of any   *   *   ditch, flume, aqueduct, reservoir   *   * shall have a lien upon the property   *   *   for which they have furnished materials,'' etc.

So far as we have been able to investigate the authorities, they are unanimous in holding that under such a statute, in order to give a material man a lien, material must be furnished to be used in the construction in the sense that it is to be wrought up in the structure so as to become a part of it when completed, as for instance lumber is to be used in the construction of a house by being wrought up and actually used in the building as a part of it, or that the material is to be directly consumed in the structure so as to improve it.  The fundamental principle upon which mechanics' liens are based is that labor and material have gone into the property of another and made it more valuable, so that when the owner is called upon to protect his property from a lien by paying for the labor or material he is but paying for something that he has received.  Value has been created by labor performed upon and material wrought into the property, or consumed directly in its improvement, and he who has furnished such labor or material has added to the value and is given a lien to the extent of the addition he has made.  *Lindemann v. Belden, Etc. Co.*, 16 Colo. App. 342, 365 Pac. 403.

To hold that a lien exists for materials furnished to be used about the construction, as an aid to the contractor

in the performance of his work, as his tools and appliances are aids, and which are not intended to go into the structure, or to be directly consumed in its betterment, but are to be taken away when the work is completed, as the tools and appliances are taken away, would be violative of that fundamental principle and would be extending the provisions of the statute to cover claims not contemplated, a species of legislation which is forbidden to the judiciary. *R. A. G. & S. R. Co. v. Bouscher,* 9 Colo. 385, 12 Pac. 438.

In the case last cited, the claim of the plaintiff was for labor performed in and upon mines as foreman, superintendent and mechanic, also as the owner's disbursing agent and in keeping books. The labor as foreman, superintendent and mechanic was held to afford a basis for a lien under the statute as it then was, and which was similar to the present one, but with regard to the labor as disbursing agent and bookkeeping this court said:

"Hence, while liens are allowed for many kinds of labor that the authorities term 'incidental,' such incidental labor must be directly done for, and connected with, or actually incorporated into, the building or improvement. It will not do to extend the protection given to services indirectly and remotely associated with the construction work. The cook who prepares food for the employees, the blacksmith who shoes the horses or repairs the implements in use, and all similar contributors to the enterprise, are not among the favored workmen. * * The keeping of defendant's books, and disbursement of its funds were matters of great importance; but we cannot declare such services within the purview of the statute."

So, while the lumber, lath, nails and other material for which a lien was claimed in the present case might have been of great use and importance to the subcontractor in the performance of his work, in the very nature of

things they were not to be actually incorporated into the structure, but were materials indirectly and remotely associated with the construction work. It is true that this Court, in *Keystone Mining Co. v. Gallagher*, 5 Colo. 23, said that powder, steel and candles used directly in a mine were lienable articles, under a statute providing a lien for "timber or other materials to be used in or about a mine", and in *Barnes v. C. S. & C. C. D. Ry. Co.*, 42 Colo. 461, 74 Pac. 570, that blasting powder and fuse used in constructing a railroad were lienable under the present statute. This might be regarded by some as not in line with what has been said. However, those articles went into the property and were entirely consumed in its betterment. Lumber used in a building improves the building by being fashioned into the proper form and put into it. Powder and fuse improve the mine or the right of way by acting directly upon it and being destroyed, so that they go into the property to its betterment, which is directly in line with the fundamental principle of mechanics' liens.

The language of the statute is that the material must be furnished to be used in the construction of the structure. Material used in a structure is the substance or matter of which it is made or may be made. *Tsutakawa v. Kumomoto*, 53 Wash. 231, 101 Pac. 369, 102 Pac. 766, (quoting from *Armour & Co. v. Western Con. Co.*, 36 Wash. 529). A work of a subcontractor, that is to be made out of earth excavated by him, cannot, in the nature of things, be made out of lumber, nails, tar-paper, etc., nor in such a case can such articles be furnished to be used in construction. We do not wish to be understood that it is necessary in all cases that the material shall be actually used and wrought into the structure. What we mean to say is that in all cases the material must be furnished to be actually used and wrought into the structure to become a part thereof, or to be directly con-

sumed to its betterment, and be of the kind called for in the contract between the owner and contractor, or between the contractor and subcontractor, before a lien will lie therefor. In some cases it has been held that the material must not only be furnished to be used in the structure, but must be actually used in it.—*Roebling Sons Co. v. Bear Val. I. Co.*, 99 Cal. 488, 34 Pac. 80; *Ward v. Kilpatrick*, 85 N. Y. 413, 39 Am. Rep. 674.

Others hold that, while it is not necessary that the material be actually used in the building, it is necessary that it be furnished for that purpose.—*Hobson Bros. v. Townsend*, 126 Ia. 453, 102 N. W. 413; *Fitch v. Howitt*, 32 Ore. 396, 52 Pac. 192.

In the present case the material could not have been furnished for that purpose. In *Oppenheimer v. Morrell*, 118 Pa. St. 189, it was held that a material man is not entitled to a lien for material furnished to a contractor for his temporary use in the erection of a building and not to form a part of the structure, and hence that lumber sold to a brick contractor for the purpose of erecting a scaffolding to be used in the laying of brick, and the same was so used, was not lienable material. In *First Nat. Bank v. Perris I. Dist.*, 107 Cal. 55, it was held that the value of patterns used in the manufacture of couplings by a material man, and the value of boxes in which the couplings were cased for shipment to the contractor, cannot be properly included as separate charges from the price of the couplings where both the patterns and boxes remained the property of the material man and were not incorporated in the structure. In *Stimson Mill Co. v. Los Angeles Traction Co.*, 141 Cal. 30, 74 Pac. 357, the contractor for a steel bridge put up a temporary structure which formed no part of the permanent bridge, but was for temporary use while the bridge was being erected. A material man furnished lumber, part of which went into the permanent bridge and part of it in the

temporary structure.   It was held that there was no lien for the part used in the temporary bridge.   While that part was used in the process of construction, it was not intended to be used in the structure covered by the contract.

Our statute makes a subcontractor the agent of the owner for the purposes of the act.   It might be argued that as such agent the subcontractor may purchase such materials as he chooses on the credit of the structure he may be building.   While the statute makes the subcontractor the agent of the owner, it does not define the measure of the authority given the agent.   If he is the owner's general agent so as to bind the property of the owner for any kind of materials he may choose to purchase upon its credit, the result would often prove very disastrous to owners.   It cannot be that the legislature intended that he should be the general agent of the owner. The agency thus created by the statute is a special one and the authority is limited to the procurement of material reasonably sufficient and necessary to go into the structure in accordance with the terms of the contract. Material men dealing with a subcontractor as such special agent are obliged to take notice of the nature of the contract and the materials necessary to go into the structure according to it.   It is the duty of the material man, if he desires to sell material to a subcontractor upon the credit of the structure, to ascertain whether or not such material is of the kind required by the subcontractor under his contract to put into the structure, for an agent constituted for a particular purpose and under a limited and circumscribed power cannot bind his principal by any act beyond his authority.—*Fitch v. Howitt, supra; Valley Lumber Co. v. Nickerson*, 13 Idaho, 682, 691-92, 93 Pac. 24; *Harlan v. Rand*, 27 Pa. St. 511.

If the material man in this case would have made inquiry as to the nature of Harris' contract, he would have

at once ascertained that the latter had no use for the lumber, lath, nails, etc., purchased by him, as material to be used and wrought up in the construction of the ditch and dam, but that in the nature of things the only connection it could have with the work would be such a remote one as to exclude a lien for it. The material man must be deemed to have had notice of what due inquiry would have revealed, when it was his duty to make such inquiry. He cannot claim a lien simply because he furnished the material to be used in the construction of the ditch and dam when no such material was to be so used by the subcontractor.

The judgment decreeing a lien upon the property of plaintiff in error is reversed.

*Judgment reversed.*

Mr. JUSTICE GABBERT AND Mr. JUSTICE HILL concur.