(No. 14126.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN HEINEN *et al.* Plaintiffs in Error.

*Opinion filed December 22, 1921.*

1. CRIMINAL LAW—*as a general rule a new trial will not be granted to impeach a witness.* As a general rule a new trial will not be granted for the purpose of admitting cumulative evidence or to afford opportunity to impeach a witness, and although the courts recognize exceptions to this rule, it must be an extraordinary case that will cause a court to grant a new trial for such purposes.

2. SAME—*when new trial will be granted for newly discovered evidence.* A new trial will be granted where there has been diligence and the newly discovered evidence relied upon does not conflict with the rule concerning cumulative evidence and is such as to strengthen the belief that justice has not been done.

3. SAME—*when written statements of witnesses on motion to vacate judgment necessitate new trial.* Where witnesses positively identify the defendants as the parties who robbed them and the identification rests upon such evidence alone, which is contradicted by corroborative evidence of an alibi as to one of the defendants,

a new trial should be granted on motion to vacate the judgment, where, without objection, letters written by such witnesses to the State's attorney are presented to the court, stating, in effect, that they believe they were mistaken in their identification of the defendants and that if they were to testify again they would not positively identify either of them.

4. SAME—*reasonable doubt must be one arising upon the whole evidence—alibi.* It is not error to instruct the jury to consider all the evidence in the case touching the question of alibi introduced by the defense as well as that introduced by the prosecution, and that the reasonable doubt the jury is permitted to entertain must be as to the guilt of the accused on the whole evidence.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding.

THOMAS D. NASH, and MICHAEL J. AHERN, (THOMAS E. SWANSON, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (HENRY T. CHACE, JR., EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error, John Heinen and Thomas Talbert, were indicted in the criminal court of Cook county, together with Raymond Curley, Ben Heim, Jacob Jacobs and Harry McDonald, on the charge of robbery of Guy E. Reburn on May 15, 1920. As the other co-defendants were not apprehended plaintiffs in error were the only defendants tried.

The evidence for the State,—that is, the testimony of Reburn, his wife, Vesta Reburn, and her mother, Anna Andrews,—showed that some time after midnight on May 15, 1920, while Reburn was opening his garage for the purpose of putting away his automobile upon the return of himself, his wife and her mother from a social gathering, he

and his wife were robbed of certain valuable jewels and a pocket-book containing $218 in cash and a check for $28.72. Reburn testified that as he was stooping down to unfasten the bolt to the door of his garage, a man, whom he on his direct examination positively identified as plaintiff in error Talbert, pointed a gun at his head and demanded that he throw up his hands; that he hesitated, and that plaintiff in error Heinen struck him over the head, knocking him down; that he did not, however, lose consciousness; that after he fell Talbert turned him over and took his tie-pin from his tie and his ring from his finger and then took his pocket-book; that he valued the tie-pin at $1800 and the ring at $1650; that while lying on the ground he saw Heinen and another man, whom he did not know, taking the jewelry from his wife; that the men were not masked and his garage was at the time lighted by four lights of 100-candle-power each. He testified that Talbert was the man who held him up; that he had grooves between his eyes, had on a fedora hat and that his hair was red; that the man whom he identified as Heinen was taller than Talbert; that after the arrest of Heinen, on May 20, 1920, he, together with his wife and her mother, went to the police station, where he saw Heinen, whom he was able to identify as the man who had taken the jewels from his wife. He also testified to having identified Talbert at the police station on September 11, 1920. The testimony of Mrs. Reburn and Mrs. Andrews was substantially the same as to what occurred on the night of the robbery and on their visits to the police station after the arrest of Heinen, and also after the arrest and return of Talbert.

The defense relied upon was previous good character of the plaintiffs in error and an alibi. The evidence on the matter of the previous good character was not contested by the State. In support of the defense of alibi of Talbert the defense offered the testimony of William Simpson, assistant business agent for the Truck-drivers' Union, who testified

that on the evening of May 15, 1920, he saw Talbert at the corner of Halsted and Madison streets; that he was with him at different places where the witness was collecting dues for the union, until about 11 :45, when they went to see Kelley, foreman of the Railways Express Company, in an endeavor to secure a position for Talbert; that Kelley said he would be going to lunch in ten or fifteen minutes and they would go together; that he, Talbert, Kelley, and a man named Thomas J. Hannon, went to a restaurant north of Twelfth street and lunched together, and that while there Kelley promised to give Talbert the first opening that came up; that they left the restaurant between 1 :00 and 1 :30 o'clock A. M.   In this the witness is corroborated by Kelley and Hannon, both as to the presence of Talbert at that place and what transpired there.   Heinen testified that on the evening of the 15th of May, 1920, he was at home and retired about 9 :30, and that he was not out during that night.

The principal controverted question on the trial of the case was as to the identity of the plaintiffs in error.   On his direct examination Reburn testified positively as to the identification of both plaintiffs in error.   On cross-examination, however, and again on re-direct, he stated that there was a doubt in his mind as to whether or not he could identify Heinen.   He stated on cross-examination he had not known either of the men, and had never seen them, that he knew of, until the night in question.   On re-direct he stated he was not sure that Heinen was the man who struck him; that he was not positive that Heinen was at the garage that night; that he had a doubt in his mind as to whether he could see the face of the man who struck him.   Vesta Reburn, the wife of the complaining witness, positively identified Heinen as being the man who took her rings, as did Mrs. Andrews.

After the verdict of the jury, which found the plaintiffs in error guilty of robbery and also found that they

were armed with revolvers, a motion for a new trial was filed urging newly discovered evidence, and in support thereof the defense offered on the hearing thereon the affidavit of James Holton, in which he stated that he was in the court room on the day of the trial, and that during a recess, after the selection of the jury, he heard the complaining witness, Reburn, say to his wife, Vesta Reburn, and her mother, Anna Andrews: "Now, they will put me on the stand first and I am going to identify both of them, and when you do go on the stand don't let them rattle you two but stick to the story just as we have gone over it, and don't forget. Don't say you think or guess they are the men but be positive,—and especially Heinen,—and don't let the lawyers get you excited." Affiant also stated in his affidavit that his presence in the court room was that of a mere spectator; that he was out of employment at the time and went in to hear the trial to pass the time, and he did not know any of the parties connected with the case and was nowise interested therein; that he did not know how the defense learned of what he saw and heard, unless by reason of remarks which he that day made to a woman in the hall of the court building who said she was the wife of Talbert. Reburn, called on the hearing of the motion for a new trial, stated that he might have talked to his wife and her mother, but denied that he had made the statements attributed to him in the affidavit of Holton. The motion for a new trial was overruled and judgment was entered.

Upon motion to vacate the judgment a further hearing of evidence was had, and there was offered in evidence before the court, without objection on the part of the State, two letters written to the State's attorney,—one from the complaining witness, Reburn, and one from his wife, Vesta Reburn, and her mother, Anna Andrews. In Reburn's letter he wrote: "I am writing to you with considerable misgivings of the propriety of this course of action and also

under the compunction of a troubled conscience, in the hope you will understand my attitude concerning this case and with the request that you undertake to help me to right a possible wrong.  *  *  *  I was strongly impressed with the evidence offered in support of Talbert's alibi, and after carefully considering the matter and all the evidence I must confess to you frankly that I have serious doubt of my identification of Talbert,—so serious, in fact, that if I were again called upon to testify on a rehearing of the case, if one were granted, I could not truthfully say that I saw Talbert the night that I was robbed.  You must wonder by this time why I was so positive in my identification when I testified, and I can only say that it has occurred to me, after mature reflection on the processes of my own mind and memory, that I must have been unwittingly influenced by the statements of others which I read and by what others told me, and that my assurance of identification was the result of such influence rather than the expression of my own independent judgment and recollection.  You will remember that I did not identify Heinen."  The letter of Mrs. Reburn and Mrs. Andrews stated that they had "come to the conclusion with him [Reburn] that if called upon again to identify Heinen as the man who helped to hold up Mr. Reburn and ourselves we would not positively do so. We are very doubtful of his presence there that night and feel that we were probably unconsciously influenced by what we heard more than by what we actually saw.  We were prompted by the most worthy motives, under the honest belief, fostered too much, probably, by what we heard, that Heinen was one of the guilty parties."  These women also stated in their letter that they were not morally certain that either Heinen or Talbert was present when they were robbed.  The motion to vacate the judgment was denied and plaintiffs in error were sentenced.  A stay of *mittimus* was issued pending the review of the case in this court.

It is earnestly urged by plaintiffs in error, whose argument in this behalf receives no reply from the People, that the judgment should have been vacated and a new trial granted. This question seems not to have been previously presented in this form to this court. As a general rule a new trial will not be granted to afford opportunity to impeach a witness. (*Cochran* v. *Ammon,* 16 Ill. 316.) It must be a very extraordinary case that will cause a court to grant a new trial in order to impeach a witness, as such course would establish a dangerous precedent. (*O'Rcily* v. *Fitzgerald,* 40 Ill. 310.) In *Fletcher* v. *People,* 117 Ill. 184, a material witness on the trial whereon the defendant was found guilty of murder, had, ten months before the trial, believing he was about to die, made a sworn statement, which was sent to the State's attorney and which was much more favorable to the defendant than was the testimony of said witness. The affidavits on motion for a new trial showed that neither the defendants nor their attorneys had any knowledge of the existence of the statement until after the trial. While recognizing the rule that a new trial will not be granted merely for the purpose of admitting cumulative evidence or to impeach a witness, this court held that the facts in that case excepted it from the general rule and reversed the judgment and ordered a new trial. Exceptions to the rule just stated have been recognized by different States in America and by English courts. In *Wright* v. *State,* 44 Texas, 642, the prosecutrix made an affidavit that her testimony was not true, and further affidavits were made affecting her credibility. A new trial was ordered on the ground of newly discovered evidence. In *Aholtz* v. *People,* 121 Ill. 560, it was held that a statement of a witness after the trial, in conflict with his testimony, is not ground for a new trial, although a statement of such witness that his testimony was false might present a different question. In *Great Falls Manf. Co.* v. *Mathes,* 5 N. H. 574, one of the material witnesses was later charged with per-

jury concerning his evidence and pleaded guilty. This was held sufficient to authorize a new trial. (*Peagram* v. *King,* 2 Hawks, 605, 11 Am. Dec. 793.) So in *Fabrilus* v. *Cook,* 3 Burrows, 1771, Lord Mansfield, upon discovery that the testimony of a material witness was suborned, granted a new trial.

None of the above cases are exactly on all-fours with the case at bar. Here the prosecuting witnesses, three in number, have written letters to the State's attorney saying, in effect, that they are convinced they should not have identified the plaintiffs in error and that they would not do so on a rehearing. While this appears by letter on motion to vacate the judgment and not by affidavit on motion for a new trial, and does not come strictly within the rule relating to the introduction of such matters into the record, no objection was made by the State to the admission or genuineness of the letters and no contradiction offered of their probative force. In fact, there is nothing, either in the record of the case or the argument for the People, which negatives either the genuineness of these letters, their sufficiency as ground for a new trial, or diligence on the part of plaintiffs in error in presenting the same. Where there is diligence, and the new matter does not conflict with the rule concerning cumulative evidence, and is such as to strengthen the conviction that justice has not been done, a new trial should be granted. (*People* v. *Cotell,* 298 Ill. 207; *People* v. *Wright,* 287 id. 580; *Wilder* v. *Greenlee,* 49 id. 253.) The letters offered here were those of the only witnesses upon whose testimony the identification of plaintiffs in error rested. If they be taken as genuine,— and we have no reason to doubt that point,—they tend to show that on another trial these witnesses would not identify plaintiffs in error, or if they did, such identification would be materially affected by the letters. The evidence for the State does not stand uncontradicted, particularly as to Talbert, who offered corroborative evidence of an alibi.

While not offered in the form of affidavits, the letters are in the record without objection and were evidently considered by the court. It was within the power of the court to set the judgment aside. Surely it cannot be said that another jury hearing these statements from the prosecuting witnesses would nevertheless return the same verdict. Regardless of what influence may have caused the writing of the letters, they were written to the State's attorney and were doubtless procured by counsel for plaintiffs in error from him. Can we, therefore, say that there is in this record the testimony of witnesses for the State identifying these plaintiffs in error in such a way that a court in reviewing their testimony, together with their subsequent letters, could have a feeling of confidence that their identification was correct? Upon their testimony rests the whole structure of the case as made by this record. Their letters show that they think they were probably mistaken. At any rate, they destroy the probative force of their testimony on that point. It was error, therefore, on the part of the trial court to refuse to vacate the judgment and grant a new trial, and for such error the judgment must be reversed and the cause remanded.

As this case must be tried again it is advisable to consider some of the other objections raised on the record.

Counsel complain of People's instruction No. 9, pertaining to the defense of alibi, in that it does not correctly state the law and disparages that defense by the language: "The court instructs the jury that in this case what is known as an alibi,—that is, that the defendants were at another place at the time it is claimed the offense was committed,—is in part relied upon by the defendants." The argument is that this instruction gave the jury to understand that the defendants did not have full faith in their defense of alibi. While this instruction might have been more clearly drawn, it is not so erroneous in the respect complained of as would

require reversal, yet the language used therein should be clarified in that particular.

It is also urged that the instruction is not the law for the reason that it states, "you are to consider all the evidence in the case touching the question of alibi introduced by the defense as well as that introduced by the prosecution, and the reasonable doubt the jury is permitted to entertain must be as to the guilt of the accused on the whole evidence." Plaintiffs in error contend that if the defense of alibi is sufficient to raise a reasonable doubt of the defendants' guilt, then it was error to say that such doubt should arise on the whole evidence. The rule, as stated in *People* v. *Blair,* 266 Ill. 70, and numerous other cases in this State, is, that proof of alibi is sufficient to warrant an acquittal if it raises a reasonable doubt of the defendant's guilt. Whether or not any evidence raises a reasonable doubt in the minds of the jury, whatever may be the nature of the proof, the rule has always been that such evidence must be considered in connection with all of the evidence in the case. If there is no evidence in the case tending to weaken it, then it is that evidence, alone, which raises the reasonable doubt. But whether or not a reasonable doubt is raised by proof of any character depends upon whether or not that proof is affected by other evidence in the case. This has always been the rule, and, indeed, it could not well be otherwise. The instruction was not open to this objection.

Other instructions were objected to, but upon consideration of the instructions as a series we are of the opinion that such objections are not well founded.

Other objections raised by plaintiffs in error are not such as will likely recur on a re-trial of the case.

For the reasons herein given, the judgment is reversed and the cause remanded.          *Reversed and remanded.*