No. 37.415

THE STATE OF KANSAS, *Appellee*, v. BIRDIE CHRISTENSEN, *Appellant.*

(199 P. 2d 475)

Opinion filed November 23, 1948.

*C. Vincent Jones,* and *Wayne W. Ryan,* both of Clay Center, argued the cause, and were on the briefs for the appellant.

*John Berglund, Jr.,* of Clay Center, and *Ed Rooney,* of Topeka, argued the cause, and were on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: This is an appeal from a conviction of murder in the first degree.

In view of the conclusion presently to be stated, brief recital of the facts will suffice. After an illness of a few hours, the husband of appellant, then Mrs. Birdie McDonald, died at Clay Center, Kan., on December 15, 1944. In the death certificate, the cause of death was stated to be acute coronary occlusion together with gastro enteritis. In August, 1947, the county attorney having secured the written consent of the widow and others, to have the body exhumed, the body was exhumed and body tissues examined. On

August 18, 1947, a report was made by the chemist that the laboratory tests showed the presence of arsenic in substantial quantities in the body of the deceased. On November 5, 1947, a complaint was filed charging appellant, who had remarried and was then Mrs. Christensen, with having caused the death of her former husband by placing arsenic in his food, and she was bound over to the district court. On January 30, 1948, an information was filed again charging appellant with murder in the first degree, and the case came to trial in March, 1948. The jury brought in a verdict of murder in the first degree but did not determine whether the punishment should be life imprisonment or death, as the statute provides, since that question, for reasons hereinafter stated, had not been submitted to the jury by the trial court. Motion for new trial was made and overruled and sentence was imposed as follows: "It is the judgment and sentence of this court that you be confined in the State Industrial Farm for Women at Lansing, Kan., under the indeterminate sentence law of this state, and until discharged by due course of law, and that you pay the cost of this action."

In considering this appeal, we are met at the outset by a serious question not raised by either party but which confronts us on the record and which cannot be ignored.

During the trial and as a result of proceedings had in chambers, counsel for the state and the defendant entered into a stipulation approved by the court with reference to the penalty that might be imposed in the event that defendant should be found guilty of murder in the first degree. The stipulation appears in the abstract as follows:

"Mr. Jones (for defendant): The State having announced that it does not wish to ask the jury to fix the death penalty and having so announced at the beginning of the trial, and also at the end of the trial, the defendant joins in asking that the question of penalty be not submitted to the jury and with the understanding that in case of a verdict of guilty of murder in the first degree as charged in the information that the penalty would not be death.

"Mr. Rooney (for the State): If the court please, in view of the fact that the State has announced, and now reaffirms its statement, that it does not wish and is opposed to the death penalty in this case, we join with the defense in the request that the instruction of the death penalty be left out in the event of a conviction of murder in the first degree It is agreed between counsel for both sides that the penalty should be life imprisonment and the question of the death penalty is, therefore, out of the case.

"Mr. Jones: I don't want to agree it shall be a life penalty.

"The Court: I take it, gentlemen, Mr. Jones, you do not wish at this time to agree that the defendant be given a life sentence. I think we both under-

stand that, that life is the other alternative. We are speaking in regard to the terms of the statute rather than as to what the ultimate outcome might be.

"Very well, gentlemen, upon the request of both the State and the defendant, the Court will not submit the matter of a death penalty to the jury, the understanding being that in the event of a verdict of guilty of murder in the first degree, the death penalty will be disregarded and other statutory penalties will be imposed, or may be imposed.

"Mr. Rooney: That is satisfactory to the State.

"Mr. Jones: I think that will take care of it."

The question at once presents itself whether the parties could enter into a binding stipulation of that sort, and whether the trial court, in view of the stipulation, could properly withdraw the question of punishment from determination by the jury.

This question is of such a nature that it is our duty to consider it even though it has not been raised by the parties. It is well settled that in matters of public concern where it appears upon the record that statutes are involved, determinative in character, it becomes the duty of an appellate court to take cognizance of them even though they are not raised by the parties. A frequent illustration of this rule is found in appellate review of questions of jurisdiction arising on the face of the record. Such questions cannot be ignored even though the parties to the appeal may not have raised them or may have sought to waive them. (*Montgomery Ward & Co., v. Ellis*, 154 Kan. 131, 114 P. 2d 802, and authorities cited p. 133.)

In 1937 the legislature enacted a law (G. S. 1947 Supp., 21-403) relating to the penalty to be inflicted upon persons convicted of murder in the first degree, the pertinent provisions of which read as follows:

"Every person convicted of murder in the first degree shall be punished by death, or by confinement and hard labor in the penitentiary of the state of Kansas for life. *If there is a jury trial the jury shall determine which punishment shall be inflicted.* If there is a plea of guilty the court shall determine which punishment shall be inflicted," etc. (Italics supplied.)

It must be noted that this statute provides without any qualification whatever that where a person is found guilty by a jury of murder in the first degree, *the jury* shall determine whether the penalty shall be death or life imprisonment.

It is a fair assumption that the trial court, as well as the parties, proceeded upon the theory that the provisions of the statute could be validly waived, since the state was not asking the death penalty. We cannot subscribe to that theory. We are fully aware of the

rule that many rights and privileges, even including guaranties of the bill of rights, may be waived by those entitled to exercise them. Notable illustrations of such right of waiver are to be found in decisions holding that a defendant in a criminal prosecution may waive a trial by jury. Among the later cases—following earlier cases—is the leading case of *Patton v. United States*, 281 U. S. 276, 74 L. Ed. 854, 50 S. Ct. 253, 70 A. L. R. 263, decided by the United States supreme court in 1930. In that case, in which the defendants were charged with a federal offense, a jury of twelve men had been duly empaneled but during the trial one of them became severely ill and was unable to continue as a juror. In open court it was thereupon stipulated by the government and counsel for defendants, defendants personally giving their consent, that the trial should proceed with the remaining eleven jurors. In the supreme court the issue was raised as to whether the verdict of guilty was valid, having been returned by a jury of eleven rather than of twelve men. In the opinion the court discussed the meaning of the phrase "trial by jury" as used in the federal constitution and said that it means a trial by jury as understood and applied at common law at the time the constitution was adopted; that among the essential elements were that the jury should consist of twelve men, neither more nor less; and that the verdict should be unanimous. Following an extended discussion of the right to trial by jury, the court said:

"We come then, to the crucial inquiry: Is the effect of the constitutional provisions in respect of trial by jury to establish a tribunal as a *part of the frame of government,* or *only to guaranty [guarantee] to the accused the right* to such a trial." (p. 293.) (Italics supplied.)

The court concluded that the constitutional provisions for trial by jury are not jurisdictional but are "meant to *confer a right upon the accused which he may forego at his election.* To deny his power to do so, is *to convert a privilege into an imperative requirement.*" (p. 298.) (Italics supplied.)

In this connection it is pertinent to note that the sixth amendment to the federal constitution provides that in all criminal prosecutions "the accused *shall enjoy the right*" to a speedy and public trial by an impartial jury of the state and district where the crime has been committed, to be informed of the nature of the accusation, to be confronted with the witnesses against him, and so forth. Similar language appears in paragraph 10 of the bill of rights in

our state constitution wherein it is provided that in all prosecutions the accused *"shall be allowed"* to appear and defend himself, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process, and so forth. And paragraph 5 of our bill of rights provides: "The *right* of trial by jury shall be inviolate." In other words, the rights to be held inviolate are rights for the benefit of the accused which no one can take away from him against his will.

We are not in the case before us dealing with a statute which merely extends a *privilege to the accused.* The statute here involved cannot be classed with constitutional or statutory provisions for the protection of individuals which may be *claimed* or *waived,* such as trial by jury, the defense of former jeopardy, or other such personal rights and privileges. It is a statute which embodies a legislative determination of *public policy on a matter of grave public concern. It is an integral part of the structure of our criminal law.* It is well known that this statute was not lightly nor hastily enacted. Whatever anyone's views may be upon the subject of capital puishment, the legislature has spoken. It has determined not only that a person convicted of murder in the first degree shall be given one of the two penalties stated, but that the jury returning the verdict of murder in the first degree "shall determine" which of the two punishments shall be inflicted. Such a statute cannot be waived or by-passed. Furthermore, *a death penalty* can hardly be classified as a *privilege* to which the doctrine of waiver, by an accused, of statutory or constitutional rights and privileges can be applied! It was not the accused, but the *state,* which here sought to waive the *jury's* exclusive *duty,* under the statute, to determine the punishment.

It follows from what has been said that no stipulation of the parties or consent thereto by the court can change the statute or affect its applicability. This is in no sense to suggest that counsel for the state may not announce and advise the jury that the state is not asking that the death penalty be imposed in case a verdict of murder in the first degree is returned. It may well be that in cases where during the trial the state has made such announcement, a jury will seldom impose the death penalty. But that fact does not alter the issue here. It is the jury and the jury alone which can determine the penalty, regardless of the attitude of counsel or court. That being the law, it becomes the clear duty of the trial

court to so advise the jury and to submit for its determination the question of penalty in the event a verdict of murder in the first degree is returned.

The authorities overwhelmingly support the conclusion we have felt compelled to reach in this case. The power of public officers and the jurisdiction of courts are to be found in the statutes and may not be conferred by stipulation or otherwise (14 Am. Jur. 380, § 184; 21 C. J. S. 45). Parties to litigation cannot validly stipulate as to what the law is, how a statute is to be construed, or what its effect is (50 Am. Jur. 607, § 5, 92 A. L. R. 664, 669-670), at least as to matters of public concern (50 Am. Jur. 607, § 4, 608; § 5; 92 A. L. R. 666). "The proper administration of the criminal law cannot be left merely to the stipulation of the parties." (*Young v. United States*, 315 U. S. 257, 259, 86 L. Ed. 832, 62 S. Ct. 510.) Even in *civil* actions it is held that the parties may not stipulate for a determination in a manner contrary to the statutes. (*In Re Estate of Meredith*, 275 Mich. 278, 266 N. W. 351, 104 A. L. R. 348.)

Finally, if the jury does not determine the penalty, upon returning a verdict of murder in the first degree, there is no one to determine it. It is true that we have a general statute providing for indeterminate sentence under which sentence may be imposed if the statute is applicable. But it is not here applicable. The rule is well established that where there is a statute covering a specific subject it controls as against a general law (*Wyandotte County Comm'rs v. Ferguson*, 159 Kan. 80, 86, 151 P. 2d 694; *Sherman County Comm'rs v. Alden*, 158 Kan. 487, and cases cited p. 492, 148 P. 2d 509).

In view of what has already been said, it is not necessary to consider the various grounds for a new trial urged by appellant. The case was vigorously tried on both sides by capable attorneys, and it is apparent that the able and experienced trial judge who presided sought to protect the rights of both the defendant and the state. However, we have carefully examined not only the abstract of the record, but the complete transcript of the proceedings, and inasmuch as the case goes back for new trial, we think it advisable to make further brief comment, without citation of supporting authorities, as to a few of appellant's contentions. These and other matters were quite fully discussed by the trial court in connection with the adverse ruling on defendant's motion for a new trial. Clearly the

defendant's motion for a directed verdict was properly overruled. The mere fact that the evidence upon which she was convicted was largely circumstantial in character did not, of course, make it insufficient to support a conviction. Appellant urges that she could not have a fair trial in Clay county because of public prejudice against her. As to that it is sufficient to say that no motion for change of venue was filed as provided for by statute. We find no error with reference to the state's endorsement of the names of witnesses to be used, nor in the way in which the jury was selected, nor in the manner of permitting peremptory challenges. Without discussing or passing upon the other alleged trial errors, we must conclude that the motion for a new trial should have been allowed because of error in failing to submit to the jury the question of punishment, if it should find the defendant guilty of murder in the first degree. In any event, the jury having been discharged, the only course open is to grant a new trial.

The judgment is reversed and the case remanded for further proceedings in harmony with this opinion.

THIELE, J. (dissenting): Defendant was convicted of murder in the first degree and sentenced as set out in the court's opinion. She appealed to this court, specifying error in ten particulars. In such scant attention as is paid to those specifications they are resolved against her. Notwithstanding there was no specification of error with respect to it, no mention thereof in the briefs, nor any argument thereon, this court has reversed the judgment of the trial court. I do not agree with the reasoning of the court's opinion but shall not write my views thereon, but only observe that if public policy as reflected in the opinion is to be given such weight, the attorney general should have taken over the prosecution (*State v. Finch*, 128 Kan. 665, 280 Pac. 910) and not permitted any waiver of the death penalty by the state.

Under the court's opinion this cause goes back for trial where the trial court must instruct the jury that regardless of other matters, in the event it finds the defendant guilty as charged, the death penalty may be inflicted by it. No one but the defendant knows whether she would not have dismissed her appeal had she any reason to suspect her specifications of error would be ignored, and the judgment reversed in such manner that she may now be in a worse predicament than before.