## No. 20505.

### LaVern Jackie Jones *v.*
### The People of the State of Colorado.
(393 P.2d 366)

Decided June 22, 1964.

Mrs. ELIZABETH L. GUYTON, Messrs. THULEMEYER and STEWART, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN E. BUSH, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

Jones is here by writ of error, seeking to have reversed the judgment and sentence entered on the verdict of the jury fixing his penalty at death for the murder of one Powell. As the basis for reversal, he asserts that the trial court committed prejudicial error in submitting to the jury the sole question of the punishment to be imposed.

After we had reversed the case of which this is the sequel (*Jones v. People,* 146 Colo. 40, 360 P.2d 686), the trial court determined that the issue of guilt need not be retried and that only the question of the penalty need be resolved by the jury. We had reversed the sentence of death originally imposed because Jones had been foreclosed from introducing in evidence certain matters which a jury might have considered mitigating and, as a result, might have been moved to impose a life sentence had this testimony been admitted.

Powell was killed by Jones while the latter was perpetrating a robbery. On the former writ of error (*Jones v. People,* supra), we stated that the proof of the robbery and the homicide had been established — in other words, that a felony murder had been committed. At the conclusion of our opinion, we said that "the judgment is reversed and a new trial ordered."

Apparently the trial court felt that the admission of testimony which may have been mitigating could not have reduced the offense below murder in the first degree and that its only effect could be upon the extent of the punishment. As a sequitur, the trial court held that there was no necessity to retry the issue of guilt and that the trial should be limited merely to submitting to the jury for determination the question whether Jones should be sentenced to death or to life imprisonment.

Six errors are assigned as grounds for reversal. We need note only assignments 1, 5 and 6, since they in ef-

fect question the authority of the court to limit the second trial to the issue of the penalty to be imposed.

■ C.R.S. '53, 40-2-1 et seq., defines homicide and its modes of commission. C.R.S. '53, 40-2-20, must be construed in connection with the section relating to murder. *Kent v. People,* 8 Colo. 563, 9 Pac. 852. The latter section provides that the "killing being proved, the burden of proving circumstances of mitigation * * * will devolve on the accused . . . "

Thus, the latter section must be construed with C.R.S. '53, 40-2-3, part of which reads as follows:

"The jury before which any person indicted for murder shall be tried, shall, if it find such person guilty thereof, designate by its verdict whether it be murder of the first or second degree, and if murder of the first degree, the jury shall in its verdict fix the penalty to be suffered by the person so convicted, either at imprisonment for life at hard labor in the penitentiary, or at death; and the court shall thereupon give sentence accordingly."

■■ A jury selected pursuant to law shall hear the case, and *that jury,* if it determines the defendant is guilty of murder in the first degree, shall fix the penalty. This is the clear meaning and mandate of the statute. *Demato v. People,* 49 Colo. 147, 111 Pac. 703, 35 L.R.A.N. S. 621, Ann. Cas. 1912 A, 783; *Shank v. People,* 79 Colo. 576, 247 Pac. 559. In determining what penalty shall be imposed, circumstances of mitigation have relevance, *Jones v. People,* supra; *Shank v. People,* supra.

■ Most of the states of the Union have statutes containing language similar to C.R.S. '53, 40-2-3, quoted above. Under varying circumstances some of them have had to decide questions pointing to the answer which should be made in this case. From these decisions we learn that the resolution of the issue of guilt and the extent of punishment must be a unitary action on the part of the jury, that together they form the verdict.

Thus, the problem has arisen under a statute like ours

where the jury returned a verdict finding the defendant guilty of murder in the first degree but failed to assess the penalty. Was there a verdict?

Considering a former statute, bearing a resemblance to ours, the Supreme Court of California, in the case of *People v. Hall,* 199 Cal. 451, 249 Pac. 859, declared:

"From a consideration of our decisions it appears to be the settled law of this state that in the trial on a charge of murder it is first incumbent upon the jury to determine the guilt or innocence of the accused. If he be found guilty of murder in the first degree, it is then incumbent on the jury to fix the penalty. * * * Under the law, the verdict in such a case must be the result of the unanimous agreement of the jurors, and the verdict is incomplete unless, as returned, it embraces the two necessary constitutent elements: First, a finding that the accused is guilty of murder in the first degree; and, secondly, legal evidence that the jury has fixed the penalty in the exercise of its discretion."

Acting under its former statute, New York came to the same conclusion in the case of *People v. Hicks,* 287 N.Y. 165, 38 N.E. (2d) 482:

"By providing that a jury 'finding a person guilty of murder in the first degree' (in cases of felony murder) *'may, as a part of its verdict,* recommend that the defendant be imprisoned for the term of his natural life,' the Legislature has plainly said that the jury must determine two matters: First, whether the accused is guilty of the crime charged; second, whether the sentence shall be death or whether the trial judge may pronounce a sentence of life imprisonment. Both questions must be determined *by the jury* and the jury's answer to both questions must be embodied in its verdict. * * * [E]ach juror should know that he is one of the twelve judges who shall decide what the verdict shall be in all its parts. Until the twelve judges have agreed on every part of the verdict, they have not agreed on any verdict."

Whenever other courts have been confronted with the

same problem, they have ruled that a verdict of guilty which does not specify the punishment is incomplete and its acceptance by the trial court constitutes error. *Smith v. State,* 23 Ala. App. 72, 121 So. 692; *State v. Christensen,* 166 Kan. 153, 199 P.2d 475; *Davis v. State,* 51 Okla. Crim. 386, 1 P.2d 824; *Mays v. State,* 143 Tenn. 443, 226 S.W. 233. "[I]f the jury does not determine the penalty, upon returning a verdict of murder in the first degree, there is no one to determine it." *State v. Christensen,* supra.

It is the mandatory duty of the trial court, without request, to instruct the jury that, should they return a verdict of guilty, it becomes their duty to designate the punishment to be inflicted, and the failure so to instruct the jury on the matter of punishment makes whatever instructions are given incomplete, and invalidates the verdict which fails to fix the penalty. *State v. Loveless,* 139 W.Va. 454, 80 S.E. (2d) 442.

Guilt and punishment are so definitely integrants of a verdict in a first degree murder case that courts, in order to arrive at a complete verdict, should admit in evidence material relevant to the question of punishment, i.e., matters in aggravation and mitigation, whether it applies to the issue of guilt or has relation only to the degree of culpability. *Fields v. State,* 47 Ala. 603; *Fletcher v. People,* 117 Ill. 184, 7 N.E. 80; *Commonwealth v. Stabinsky,* 313 Pa. 231, 169 Atl. 439.

In qualifying jurors for service in first degree murder cases, they must be willing to exercise their discretion in fixing the penalty to be imposed, should they find the defendant guilty of murder in the first degree. In so holding, this Court said in *Demato v. People,* supra:

"The law-making power of the state, namely, the general assembly, has provided that capital punishment may be inflicted for murder in the first degree, *when the jury finding such verdict so determines,* or life imprisonment, in the discretion of the jury. In other words, under the law, it is the *bounden duty of the jury convicting one of*

154

*the crime of murder in the first degree to exercise their discretion in fixing the penalty to be imposed."* (Emphasis supplied.)

At one time most of the states had statutory language very similar to ours. In recent years California, Connecticut, New York, and Pennsylvania have adopted statutes in which capital cases are tried under what has been designated as a two-trial or split-verdict system. The Two-Trial System in Capital Cases, by Togman, 39 N.Y.U. L. Rev. No. 1, January 1964, p. 50. That the legislatures of these four states deemed it necessary to adopt legislation permitting the trial of the issue of guilt first and the question of penalty second is persuasive of the fact that, prior to such enactment, this could not be done.

 This Court was without power to change the law thus enacted by the legislature, and when remanding the case for a new trial, necessarily required a retrial of the issue of guilt as well as submitting to the same jury the question of the penalty to be imposed. To justify the action of the trial court in this case would result in judicial amendment of a legislative act; this we are powerless to accomplish. *Farmers' Irr. Co. v. Kamm,* 55 Colo. 440, 135 Pac. 766.

 May the Court announce a legislative intent which is inconsistent with the plain and literal meaning of the statute? "[C]ourts will not depart from the plain meaning of words in search of a legislative intention the words themselves do not plainly and definitely express. . . . " *People v. Mooney,* 87 Colo. 567, 290 Pac. 271; *Isaak v. Perry,* 118 Colo. 93, 193 P.2d 269. Courts may not assume a legislative intent which would vary the words used by the general assembly. *People v. Horkans,* 109 Colo. 177, 123 P.2d 824.

For the reasons herein set forth, the judgment must be reversed and the case remanded for a new trial of all issues in this case. So ordered.

Mr. Justice Moore and Mr. Justice Pringle dissent.

MR. JUSTICE MOORE dissenting:

I respectfully dissent. I find no decision of this Court which contains any language requiring a third trial of this defendant. The statements quoted in the majority opinion from decisions written in other cases were clearly applicable to the factual situations under consideration in those cases. There is no similarity between them and the instant case insofar as the controlling question is concerned.

In the first trial of the defendant the evidence clearly established, without one word of contradiction, that the defendant in the course of a robbery beat his victim to death by striking him in the head with a hammer and after the handle of the hammer broke off he finished the job with an eighteen-inch pipe wrench.

The "felony murder" statute makes such a killing murder of the first degree, and the only question that could possibly have remained for the jury to decide was the question as to whether the defendant should be put to death or serve the rest of his life in prison.

The jury condemned the defendant to death. Out of an abundance of caution this Court held that the trial court erred in not making it possible for a psychiatrist to give testimony which might conceivably have caused the jury to reduce the penalty to life imprisonment. The only error committed by the trial court upon the first trial related exclusively to the matter of the penalty to be paid by the defendant.

Upon the second trial the court limited the question to be decided by the jury to whether the penalty should be life imprisonment or death. The evidence which was not produced at the first trial and which was the only reason for the granting of a second trial, was not presented to the jury when the case was retried.

At the first trial no defense to the "felony murder" was offered; the sole question was: "How shall the guilty man be punished?" At the second trial no offer

156

of proof from any witness was made tending to prove that the defendant did not commit a robbery in the course of which he hammered his victim to death. Not one word can be found in the record of either case to indicate that any issue except that of the punishment to be meted out remained for jury consideration. Two different juries have considered this question and fixed the penalty at death. I think the action taken by the trial court upon the second trial was consistent with common sense in the absence of any new plea raising the issue of sanity, and in the complete absence of any offer of proof tending to absolve the defendant of guilt of a murder committed in the perpetration of a robbery. I fail to see how the defendant could possibly be prejudiced by the court's action.

Under the circumstances of this case, I am unable to find anything in the statute which prohibits the action taken by the trial court. A third trial in this case will serve no purpose other than to exalt the "form" of things at the sacrifice of "substance."

The procedure followed by the trial court upon the second trial of this case was in all respects the same as that followed by the Supreme Court of Maryland in *Brady v. State,* 226 Md. 442, 174 A. (2) 167, and the statute there under consideration in all pertinent provisions was the same as our own. The judgment in that case was reviewed by the United States Supreme Court and affirmed. *Brady v. State of Maryland,* 83 S. Ct. 1194, 373 U.S. 83.

I would affirm the judgment.

I am authorized to state that MR. JUSTICE PRINGLE joins in this dissent.