THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* THOMAS SMITH, Defendant.

Supreme Court, Erie County, June 22, 1937.

*Walter C. Newcomb*, District Attorney, and *Peter J. Naples*, Assistant District Attorney, for the plaintiff.

*William J. Flynn*, *Thomas L. Newton* and *Daniel B. Shortal*, for the defendant.

HARRIS, J.   After trial before a court and jury and conviction by a jury of the crime of murder in the first degree, this defendant appears today for sentence.

The trial jury had before it the charge of murder in the first degree submitted in two different forms, *i. e.*, violation of subdivision 1 of section 1044 of the Penal Law, and a violation of the latter part of subdivision 2 of section 1044 of the Penal Law, commonly known and described as a felony murder.   The jury returned a verdict finding the defendant guilty of murder in the first degree while engaged in the commission of a felony, and recommended to the court that the defendant be imprisoned for the term of his natural life.

Prior to the enactment of chapter 67 of the Laws of 1937, which became a law March 17, 1937, amending section 1045 and adding section 1045-a of the Penal Law, a conviction of murder in the first degree carried with it only one punishment, to wit, a death sentence.   Said sections now provide as follows:

" § 1045.   Punishment for murder in first degree.   Murder in the first degree is punishable by death, unless the jury recommends life imprisonment as provided by section ten hundred forty-five-a.

" § 1045-a. Life imprisonment for felony murder:   Jury may recommend.   A jury finding a person guilty of murder in the first degree, as defined by subdivision two of section ten hundred forty-four, may, as a part of its verdict, recommend that the defendant be imprisoned for the term of his natural life.   Upon such recommendation, the court may sentence the defendant to imprisonment for the term of his natural life."

Apparently the conviction of the defendant herein is the first to occur since such chapter 67 took effect.

The history of the enactment of chapter 67, briefly, is as follows: On January 6, 1937, the Governor of the State sent to the Legislature his annual message, which contained, among other matters, the following:

" While discussing the anti-crime program, I wish to bring once more to your attention a somewhat related matter which has long been on my mind. That is the necessity of changing the Penal Law on felony murder.

" Under our existing law, in the event that a murder occurs during the commission of any felony, all those involved are held equally responsible and if found guilty must be sentenced to death. The jury has absolutely no discretion. The verdict must either be acquittal or murder in the first degree for which the penalty is death. In other cases of murder, the jury has the right of bringing in verdicts of murder first degree, murder second degree or manslaughter. As the result of the limitation placed on the jury in felony murder cases, the jury is faced with the choice of condemning to death a man for whom it would like to show some clemency, or, on the other hand, of letting him go completely unpunished.

" I believe that the sentence for felony murder should continue to be death, the same as for premeditated murder. However, I would empower a jury to accompany any verdict of guilty with a recommendation of executive clemency in which case the sentence shall not be death but imprisonment for life.

" My reasons for this recommendation are two-fold. The first is that it will make it easier for the jury to bring in verdicts of guilty in felony murder cases. In the second place, it will permit the jury to fit its verdict to what it may consider to be the varying degrees of moral guilt of the persons involved in the same crime. I strongly recommend this change."

As a result of such recommendation by the Governor, chapter 67, as above quoted, was enacted. It will be noted from the Governor's message that in his opinion a charge of felony murder, so called, could only result in acquittal or a verdict of murder in the first degree. Although the Court of Appeals has held otherwise (*People* v. *Cummings*, 274 N. Y. 336), it is only fair to state that there has been considerable confusion as to the right of a jury to bring in a verdict for a crime less than that of murder in the first degree when there is an accusation of felony murder. Although the type of felony murder described by the Governor in his message is the ordinarily known killing by a group engaged in another felony, the statute, as passed by the Legislature, brings within its terms any felony murder and consequently the accusation on which the defendant was convicted. One may gather from the Governor's message that his intention was that, on the recommendation of the jury, the executive could exercise clemency, but the verbiage of chapter 67 is such that the discretion of sentence is left with the trial court if the jury makes a recommendation for life imprisonment.

In practically every other crime the trial court has had the burden and the task of choosing the sentence. To that task is now added the sentence of persons engaged in felony murder when the jury recommends life imprisonment. Like all other matters in which discretion is involved, the court should have a basis for such discretion. In the case of the defendant herein, the court is convinced that such discretion should be exercised for the following reasons:

The defendant, in passing through the years of adolescence, has been left with a sexual urge over which, apparently, at times he has no control, although the jury had ample proof on which they could find him sane, as defined in section 1120 of the Penal Law. This sexual urge led to a most brutal killing by the defendant, which killing the jury has found by its verdict was not committed with a design to take life. The life sacrificed in this killing was that of a young girl of good repute who unfortunately fell into his path some time during the night of February 5, 1937. The court is convinced that such killing came from a result of unrestrained sexual desires and fury, but also that the killing was committed by one who during his life, up to a short time prior to the killing, had been a person of good repute, fine home and religious training, and with a promise, prior to the commission of the crime, of a happy future life of a successful man. In deciding upon a sentence in this case, the court has in mind the objectives of punishment under the Penal Law of this State, to wit: (1) That others may be deterred from similar crimes; (2) that one convicted should be deterred from future crime; and (3) that an endeavor should be made to return the one convicted to society as a useful member. In view of the mental defects from which the defendant suffers, it may well be doubted if he can ever be returned to society. Again considering his mental ailments, a sentence of death would not deter others of similar types of mind from the commission of similar crimes. So far as the objective of deterring the defendant from further commission of similar crimes, that can be attained in one of two ways: one by a death sentence and the other by imprisonment for the remainder of his natural life, as recommended by the jury. Imprisonment for his natural life cannot be in any way disturbed except by constitutional amendment, by the act of the Legislature or the act of the Governor. Over these methods of change of sentence the court has no control. The public policy of the State, as enacted by the Legislature into chapter 67, is one of avoiding the death sentence in cases that appeal to the conscience of the jury and the court. If the death sentence is to be avoided in the case of one who in a group felony is a participant in a killing, then apparently there was no reason why it should not be avoided

in the case of a person of the mental type and former history of the defendant herein. In view of this the court sentences the defendant herein to State's prison for the remainder of his natural life.