THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
EDWARD HICKS, Appellant.

Argued October 20, 1941; decided December 4, 1941.

*James F. Ryan, Philip J. Jones* and *Edward P. Smith* for
appellant. The trial court committed reversible errors in
the charge on the law of felony murder with a recommenda-
tion of life imprisonment and in refusing to charge as
requested. (*People* v. *Ray,* 172 Misc. Rep. 1004; *People*
v. *Ertel,* 283 N. Y. 519.)

*William O'Dwyer, District Attorney (Henry J. Walsh* of counsel), for respondent. The trial court did not err in its charge. (*People* v. *Gati*, 279 N. Y. 631; *People* v. *Ertel*, 283 N. Y. 519.)

LEHMAN, Ch. J. The defendant Edward Hicks was indicted jointly with his brother, Miles Hicks, for the murder of Max Graboff. The brothers were tried together. The indictment is in common-law form and the jury was instructed that it might find the defendants guilty of murder in the first degree if it found that the defendants killed the deceased and that the killing was committed either from a deliberate and premeditated design to effect death or while the defendants were engaged in the commission of a felony. The jury thereafter brought in these verdicts: " In the case of Edward Hicks, Guilty as Charged; in the case of Miles Hicks, Guilty as Charged, with a Recommendation of Mercy." Thereafter sentence of death was pronounced upon Edward Hicks and Miles Hicks was sentenced to imprisonment for the term of his natural life.

At the time of the homicide Edward Hicks was twenty-one years old, married and had two children; his brother, Miles Hicks, was sixteen years old and lived with Edward Hicks. According to the evidence produced by the People the brothers worked, though perhaps not steadily, in a garage. They were in great need of money. There was no food in the home of Edward Hicks and he had no money to pay rent which was due and which the agent of the landlord was trying to collect. The deceased Graboff was the owner of a small store. The defendants noticed that he carried on his person a well-filled wallet. They decided to rob him to obtain the money which they needed so sorely. Edward Hicks struck the deceased over the head with a heavy piece of steel which had been part of an axle shaft of an old automobile. The blows fractured the skull of the deceased, but to make sure that he would not recover, and perhaps identify his assailants, they cut his throat with a knife they had brought for that purpose. Then they opened the cash register and took out its con-

tents, but it contained only five dollars and twenty-five cents. They took the well-filled wallet from the person of the deceased, but it contained no money — only papers of no value to them.

This is, in brief, the story of the crime according to the evidence produced by the People. The defendants did not seriously contradict it. They claimed only that on the morning of the crime they had drunk some of the wretched stuff which is, it is said, known as " King Kong " whisky, and that they do not know what they did or what happened after they had drunk that stuff. The mother of the defendants and their brother are confined in a state hospital for the insane, but nothing in the evidence would justify an inference that the defendants were insane when the homicide occurred, except in so far as the intoxication and mental oblivion which, if their story is believed, was produced by the " King Kong " whisky might be regarded as temporary insanity. Upon this record there can be no doubt the jury were fully justified in finding the defendant, Edward Hicks, guilty of murder in the first degree and Edward Hicks alone is an appellant in this court. The only questions which he seeks to raise upon this appeal concern the court's instructions to the jury. In his charge the trial judge instructed the jury: " There cannot be any recommendation unless the twelve of you agree. But if you have all agreed that the defendant is guilty, it is nevertheless your duty to report that verdict to the Court. Is that clear? Even though you cannot agree on the recommendation. In other words, you cannot use the recommendation as bait, in determining the guilt or innocence of the defendant. The recommendation has nothing to do with that determination. You must first determine whether or not the defendant is guilty of murder in the first degree. Having once determined that (unless you desire to change your mind on the evidence — which you are at liberty to do before you report your verdict, of course), having once determined the defendant's guilt, that is something like finished business. To use a popular expression, you ' lay

that aside.' And then if you are all agreed that it is under the felony theory of murder, you pass to a consideration of the recommendation. Then if you are all unanimous that there should be a recommendation, it is your duty to bring in the recommendation; but if you are not unanimous on that proposition it is nevertheless your duty to bring in the verdict of guilty of murder in the first degree, even though you cannot agree on the other. Is that plain?"

When the counsel for the defendant excepted to these instructions and asked the court for other instructions, the court said: " I charge this jury again that the first order of business is to decide the guilt or innocence of these defendants. If they find that they are guilty of murder in the first degree solely on the felony theory, then for the first time can they go to the consideration of the recommendation. If they are agreed on the guilt, but they cannot agree on the recommendation, they must nevertheless report a verdict of guilty without a recommendation. I cannot make that any more plain than that."

By chapter 67 of the Laws of 1937 the Legislature added section 1045-a to article 94 of the Penal Law, entitled " Homicide." It provides that: " A jury finding a person guilty of murder in the first degree, as defined by subdivision two of section ten hundred forty-four, may, as a part of its verdict, recommend that the defendant be imprisoned for the term of his natural life. Upon such recommendation, the court may sentence the defendant to imprisonment for the term of his natural life."

By the same statute the Legislature amended section 1045 of the Penal Law by adding after the words " Murder in the first degree is punishable by death " the proviso " unless the jury recommends life imprisonment as provided by section ten hundred forty-five-a."

The Legislature added these provisions after it had received a message from the Governor in which the Governor said:

" While discussing the anti-crime program, I wish to bring once more to your attention a somewhat related

matter which has long been on my mind. That is the necessity of changing the Penal Law on felony murder.

" Under our existing law, in the event that a murder occurs during the commission of any felony, all those involved are held equally responsible and if found guilty must be sentenced to death. The jury has absolutely no discretion. The verdict must either be acquittal or murder in the first degree for which the penalty is death. In other cases of murder, the jury has the right of bringing in verdicts of murder first degree, murder second degree or manslaughter. As the result of the limitation placed on the jury in felony murder cases, the jury is faced with the choice of condemning to death a man for whom it would like to show some clemency, or, on the other hand, of letting him go completely unpunished.

" I believe that the sentence for felony murder should continue to be death, the same as for premeditated murder. However, I would empower a jury to accompany any verdict of guilty with a recommendation of executive clemency in which case the sentence shall not be death but imprisonment for life.

" My reasons for this recommendation are two-fold. The first is that it will make it easier for the jury to bring in verdicts of guilty in felony murder cases. In the second place, it will permit the jury to fit its verdict to what it may consider to be the varying degrees of moral guilt of the persons involved in the same crime. I strongly recommend this change."

By judicial decisions and by statute, courts and legislatures have decreed that in determining guilt a jury shall not take into consideration, or be influenced by, the punishment which will be meted out to a convicted offender. (Code Crim. Proc. § 420.) Judges and legislators would be singularly obtuse if they did not recognize that in spite of judicial and legislative mandate jurors are at times influenced in their consideration of whether or not they should bring in a verdict of guilt of murder in the first degree by their knowledge that sentence of death will follow upon

a verdict of guilt of an accused. We know that where a jury is free to determine not only the guilt of an accused but also the degree of his guilt, jurors do at times find guilt of a lesser degree of crime than the evidence may have indicated with compelling force — and that where, as in many cases of " felony murder," a jury must either acquit or bring in a verdict of murder in the first degree, at least some jurors have hesitated, though the evidence may leave no possible doubt of guilt. That is the situation which the Governor asked the Legislature to remedy, and the statute is, it is clear, intended to carry out in substance the suggestions of the Governor.

No longer is a jury faced with " the choice of condemning to death a man for whom it would like to show some clemency or, on the other hand, of letting him go completely unpunished." An additional choice is, under the new statute, offered to the jury. Now it may, by a verdict of " not guilty," let the accused go free. It may by a verdict of " guilty " without recommendation of life imprisonment as part of the verdict " condemn to death " the accused. It may in proper case " fit its verdict to the varying degrees of moral guilt " by recommending, *as a part of its verdict* when finding the defendant guilty of murder in the first degree, that the defendant be imprisoned for life. A finding of guilt by a jury has no legal consequences unless it is embodied in a verdict, and the Legislature has expressly empowered a jury finding a defendant guilty to make a recommendation of life imprisonment a part of its verdict. The statute does not expressly, or by fair implication, provide that a jury so finding shall render a verdict of " guilty " without a recommendation of life imprisonment where the jurors have not agreed upon such a verdict. Until the jury has reached agreement upon every part of the verdict it has not agreed upon the verdict.

By providing that a jury " finding a person guilty of murder in the first degree " (in cases of felony murder) " *may, as a part of its verdict,* recommend that the defendant be imprisoned for the term of his natural life," the Legis-

lature has plainly said that the jury must determine two matters: *First*, whether the accused is guilty of the crime charged; *second*, whether the sentence shall be death or whether the trial judge may pronounce a sentence of life imprisonment. Both questions must be determined *by the jury*, and the jury's answer to both questions must be embodied in its verdict. A juror considering the question of whether an accused is guilty of the crime charged can no longer be influenced consciously or unconsciously by knowledge that the finding of guilt of the crime charged will entail a mandatory penalty which in his opinion is not justified by the degree of moral guilt of the accused. Each juror should now know that the finding of guilt does not carry that mandatory penalty unless the jury fails to make a recommendation of life imprisonment a part of the verdict and each juror should know that he is one of the twelve judges who shall decide what the verdict shall be in all its parts. Until the twelve judges have agreed on every part of the verdict they have not agreed on any verdict.

There is no ground for the assumption that the Legislature did not intend that the jury might accord the benefit of a recommendation of life imprisonment to an actual killer in a felony murder if, in the opinion of the jury clemency should be shown. Ordinarily where the evidence shows that the accused has actually killed another in the commission of a felony, or otherwise, the trial judge must charge the degrees of homicide, but the trial judge may not do so where the accused is an accomplice in the felony and is not otherwise a party to the homicide. (*People* v. *Seiler*, 246 N. Y. 262.) The result was that before section 1045-a of the Penal Law was enacted, there were many cases where an accused who, according to the evidence, had killed another in the commission of a felony, was nevertheless convicted of a lesser degree of homicide than murder in the first degree, and instances were not rare where accomplices in the felony were acquitted because the jury chose to let the accused go free rather than to condemn to

death. If the statute is read in accordance with the construction now placed upon it by the court, far from making felony murder the most difficult crime in which to obtain a conviction, it will perform its intended function of making convictions more certain. A jury finding an accused guilty of homicide in the commission of a felony can have no more difficulty in determining whether the verdict of guilty should or should not include a recommendation of life imprisonment than a jury finding an accused guilty of a homicide, otherwise committed, has in fixing the degree of crime.

It is said that in *People* v. *Gati* (279 N. Y. 631) the precise question presented by this case was before this court. The charge delivered by the court in that case contains instructions to the jury which if not thereafter changed would doubtless present the same questions of law presented in this case, and the correctness of those instructions was discussed in the briefs of the parties. The counsel for the defendant excepted to this part of the charge and from the colloquy which followed it appears that counsel and court were not entirely in agreement concerning the effect of what had been charged. The jury returned a short time after it had retired and reported that " the jury find the defendants Gati and Sberna guilty of murder in the first degree, but are in disagreement on the matter of recommendation of mercy." The trial judge refused to accept that verdict and directed the jury to return to the jury room. Then this colloquy followed:

" The Court: I have instructed you that your verdict could be as to either or both of these defendants guilty of murder in the first degree; or as to either or both of the defendants guilty of murder in the first degree with a recommendation for the imposition of the penalty of life imprisonment instead of death. I gave you those instructions and it is your duty to follow them in your verdict. You can find them, or you can disagree altogether, or you can acquit both defendants, but you have no right to defy the instructions on the law given to you by the Court and

to render the verdict as you did. You may retire to the jury room until you can arrive at a verdict.

"Mr. Barra: With deference to your Honor, we except to your Honor's statement to the jury as to the law. We ask your Honor to charge the jury that if the jury are unable to agree on the question of recommendation to the Court that they must disagree.

"The Court: On that point?

"Mr. Barra: On all of the entire case.

"The Court: I refuse to so instruct them and I instruct them that they may retire. I say that they may disagree in this, they may never come to a verdict because they cannot agree on that point. That is their right, but they cannot come in here and render a partial verdict on the question of a recommendation.

"Mr. Barra: In other words, if the jury ——

"The Court: They cannot come in here and say we find the defendants guilty of murder in the first degree and some of us want to make a recommendation, because that is not the verdict of the jury.

"Mr. Barra: And if the jury cannot agree on the question of recommendation ——

"The Court: Then they can disagree as to the whole verdict. You may retire gentlemen.

"Juror No. 6: There seems to be some doubt in one of the members of the jury as to your interpretation of the law relative to a recommendation.

"The Court: I believe ——

"Juror No. 6: You brought it out very clearly that unless twelve members of this jury were in accord for a recommendation, the recommendation was considered out of the verdict, is that correct?

"The Court: I cannot go into the jury-room with you to deliberate. When the jury comes in here to say they have agreed on a verdict, they must agree on a verdict under the law. If they cannot agree on that verdict under the law they must disagree.

"Mr. Barra: As to the entire case?

" The Court: As to the verdict.

" Mr. Leibowitz: As to the entire case.

" The Court: I do not want any instructions from you gentlemen. I have given the jury the law. You may retire."

Upon the appeal no question was presented by the record whether the original charge was correct, for error there, if any, was cured by the subsequent instructions. The court did not pass upon the correctness of the original instructions which were superseded or, at least, explained by the later instructions. Points raised by briefs, not properly presented by the record, are ordinarily not considered by the court. (*Dixon* v. *LaGuardia*, 277 N. Y. 84.) In *People* v. *Gati* (*supra*) the record also showed that the trial court had refused a request to charge which perhaps should have been granted, but this court agreed that the omission could not have affected the rights of the defendants. It was only because of *that omission* that three of the judges of this court voted to affirm under section 542 of the Code of Criminal Procedure.

The trial court has read into the statute by implication a proviso that a jury must *first* agree upon a *verdict* of guilty, which will have the effect of condemning the accused to death and then may recommend life imprisonment as part of the verdict only if *all* the jurors agree to recommend life imprisonment. That is not justified by the language of the statute and would in large measure defeat its plain purpose. Under that construction a jury still must face the choice of condemning the defendant to death or letting him go free unless all twelve jurors thereafter agree upon a recommendation of clemency. That construction ignores the fact that the choice whether a recommendation of life imprisonment should or should not be a part of the verdict is left to the *jury*, and the verdict is incomplete until all have agreed. That construction assumes that the Legislature has confided to a single juror the choice of life or death for an accused.

Since for these reasons the judgment should be reversed, we do not consider any other claims of error in the charge of the trial judge made by the appellant.

The judgment of conviction should be reversed and a new trial ordered.

FINCH, J. (dissenting). We dissent and briefly state our reasons why we believe the trial judge in his charge to the jury committed no error in this case. In any event, the error, if any, should be disregarded in accordance with the command of the Legislature that where error does not materially affect the guilt of the defendant it must be disregarded. (Code Crim. Proc. § 542.) As fairly stated in the majority opinion, " upon this record there can be no doubt that the jury was fully justified in finding the defendant Edward Hicks guilty of murder in the first degree * * *." Indeed, counsel for the defendant, in his summation to the jury, pleaded with the jury to bring in a verdict of murder in the first degree with a recommendation of life imprisonment, thereby conceding guilt.

The error urged as a reason for reversing this conviction must be viewed against the background of the facts found by the jury. For the purpose of robbery the defendant bludgeoned a storekeeper into insensibility with a part of a steel axle, and then, fearful lest, still living, the storekeeper might identify his assailant, cut his throat with a knife which had been specially sharpened for that purpose. · The majority opinion of the court concedes that the trial court properly charged the jury that they must first determine the guilt of the defendant. This is and always has been the primary inquiry of a jury in a criminal case. In arriving at a verdict of guilty the vote of the jury must be unanimous, and, in that sense, it may be said that each juror convicts the defendant. In this case, in connection with the finding of guilt, the court was careful to state: " * * * unless you desire to change your mind on the evidence -- which you are at liberty to do before you report your verdict * * *." By this charge of the court the jurors were instructed that, although they had agreed on a verdict of guilty, if, while

they were discussing the recommendation for life imprisonment, additional light was thrown on any evidence, any member of the jury could prevent a verdict by changing his vote on the question of guilt up to the moment of reporting the verdict to the court.

By its very nature the question of a recommendation of life imprisonment, since it affects punishment and not guilt, necessitates that it be considered by the jury after the question of guilt has been established. This is so not only because of the nature of the recommendation, but also because of the provisions of the Code of Criminal Procedure (§ 420) providing that the jury, in determining the question of guilt, must not consider punishment.

An analysis of the entire statute leads to the same conclusion, namely, that only after the jury has found the defendant guilty may a recommendation of mercy be considered. Section 1045 of the Penal Law provides that murder in the first degree is punishable by death, unless the jury recommends life imprisonment, as provided by section 1045-a. Thus the statute commands the jury to do just what the trial justice charged. The verdict of guilty must prevail *unless* the jury makes a recommendation as it may do pursuant to section 1045-a.

We come then to a consideration of the intention of the Legislature in enacting section 1045-a of the Penal Law. That section provides: " A jury finding a person guilty of murder in the first degree, * * * may, as a part of its verdict, recommend that the defendant be imprisoned for the term of his natural life * * *." Upon its face this statute merely gives to the jury the authority to recommend life imprisonment as punishment for the crime of felony murder. The exercise of the power granted to the jury is expressly made permissive by the words of the statute. However, should the jury elect to exercise this permissive power they must do so in the only way in which a jury may act in a criminal case, *i. e.*, by unanimity. The Legislature has so provided, since the recommendation is made as a part of the verdict. It follows that if the jury

is unable to agree upon this mitigation of punishment the recommendation fails because the jury has not acted in the only way in which a jury can give itself expression. (*People* v. *Gati*, 279 N. Y. 631.)

A majority of the court would have us say that the Legislature, in granting this permissive power to the jury, meant also that unless the jury should reach an agreement in reference to this mitigation of punishment, no verdict of guilt can be had. The statute does not so provide, and it is submitted that in the absence of any language in the statute lending itself to that construction, no intention of the Legislature to that effect should be inferred. It is the function of the court to read the statute as it was written by the Legislature. The Legislature has modified the rigidity of our Penal Law by providing that a unanimous jury may, by its recommendation, save the defendant from the punishment of death, but it has not gone further and provided that a defendant guilty of murder in the first degree may avoid conviction because a single member of the jury does not concur in refusing to recommend leniency.

A majority of the court are using the words " as a part of its verdict " to mean not only as a part of the verdict, which would be satisfied by an accompanying recommendation unanimously agreed upon, but also to include a meaning that the verdict of guilty although found by the jury cannot continue to prevail until the jury either votes a recommendation unanimously or *unanimously* fails so to do. An examination of this decision reveals that if the court holds that the jury must be unanimous on the question of the recommendation and can make no finding of guilt unless they also either make or unanimously reject a recommendation for mercy, then, although the jury unanimously finds a defendant guilty of murder in the first degree, no verdict may be had if one juror, although he agrees that the defendant is guilty of felony murder, insists upon voting for a recommendation for life imprisonment. The practical effect of this decision is that the jury must be discharged (Code Crim. Proc. § 428), and the defendant

who has been found guilty of murder in the first degree by all twelve of the jurors goes back for a new trial or goes free if no jury can be found which will vote unanimously on both questions. Surely such a result could not have been intended by the Legislature.

A more reasonable intention of the Legislature in enacting section 1045-a of the Penal Law was pointed out by the Governor in his message to that body. In that message the Governor stated that the power to make a recommendation, if given to the jury, would make it easier to convict defendants in felony murder cases since it would " permit the jury to fit its verdict to what it may consider to be the varying degrees of moral guilt of the persons involved in the same crime." To us this indicates that it was never the legislative intent in enacting section 1045-a of the Penal Law to accord this benefit of a recommendation of life imprisonment to the actual killer at all, but rather to permit the jury to fit its verdict to the varying degrees of participation in the crime. Moreover, if the statute is read in accordance with the construction of the majority of the court, then felony murder becomes the most difficult crime in which to obtain a conviction, because even if the defendant is found to be guilty by all twelve of the jurors no verdict can be rendered unless there is also unanimity upon the question of the punishment to be meted out to the criminal. Neither reason nor authority compels this conclusion.

In *People* v. *Gati* (279 N. Y. 631) the precise question presented by this case was before this court and was the only point urged in the brief of defendant-appellant Gati. The proper objections and exceptions had been taken. The judgment there was affirmed, three judges voting to affirm under section 542 of the Code of Criminal Procedure. Counsel in the *Gati* case, just as did counsel in the case at bar, made no attempt to excuse the guilt of the defendant, the defense consisting entirely of an appeal to the jury for the purpose of obtaining from them a recommendation of life imprisonment.

The judgment appealed from should be affirmed.

LOUGHRAN, RIPPEY and DESMOND, JJ., concur with LEHMAN, Ch. J.; FINCH, J., dissents in opinion in which LEWIS and CONWAY, JJ., concur.

Judgment of conviction reversed, etc.