Burke, J.
Joseph Graber, an operator of a retail liquor store in Brooklyn, was killed by one blast from a shotgun during *154 an attempted robbery of the liquor store. The defendant and one James A. Jordan were indicted and tried for the crime. At the trial it was established that defendant fired the fatal shot.
The jury returned verdicts of guilty of the crime of murder in the first degree (felony murder) against both defendants. As to Jordan, the jury recommended leniency, and he was subsequently sentenced to life imprisonment. Defendant-appellant, however, received no such recommendation, and was sentenced to death. This appeal is concerned solely with the propriety of this latter verdict and judgment of conviction.
Problems concerning the weight of the evidence, and the sufficiency of the evidence to convict defendant of the crime charged beyond a reasonable doubt are not urged upon us. Although we may review such issues in capital cases even if they are not properly raised, a careful reading of the record indicates that there would be no substance to these objections, if raised.
However, there are errors of law which require a reversal.
The court, at the conclusion of its charge, informed the jury that the possible verdicts which could be returned against this defendant-appellant were: not guilty, guilty of felony murder without a recommendation, guilty of felony murder with a recommendation, guilty of common-law murder in the first degree, guilty of murder in the second degree, and guilty of manslaughter in the first degree.
The court told the jury that the possible verdicts they could return against Jordan were: not guilty, guilty of felony murder without a recommendation; and guilty of felony murder with a recommendation.
At the completion of the charge, the jury retired for deliberation. Later, they returned to the courtroom in order that the Trial Judge might answer the following communications from them: “ Please let us have a listing of the possible verdicts to be arrived at for each defendant, with the exact wording,” and “ What verdicts are there for felony murder? ”
The court once again enumerated the possible verdicts returnable against each of the defendants. Then the following colloquy took place:
“ The Foreman: That’s what I wanted to clarify.
The Court: All right. You may retire.
*155 The Foreman: Your Honor, how about that felony murder?
The Court: That answers that, doesn’t it, Jurors?
The Foreman: Felony murder is without any recommendation of a verdict in the first degree.
The Court: All right, you may retire, if that answers your question.
The Foreman: Your Honor, we have a definition of murder in the second degree. One of the jurors wanted a definition of murder in the second degree.
The Court: If you reach the common law theory in your deliberations,—
The Foreman: Common law theory
The Court: — murder in the second degree is an unlawful killing with an intent to kill, without premeditation and without deliberation, as I defined those terms for you.
The Foreman: How about without robbery, if robbery was intended?
The Court: I will give you the entire charge, if you want it over again.
The Foreman: Well, just a minute, your Honor
The Court: Are you gentlemen satisfied ? Don’t discuss it here, please. You can retire in this little room if you want to discuss it, and ask further questions. But I will give you the entire charge on the crime if you want it again.
The Foreman: I don’t think it is necessary, your Honor.
The Court: All right. You may retire.”
The jury retired. They returned a verdict of guilty of felony murder without a recommendation against defendant-appellant and a verdict of guilty of felony murder with a recommendation against defendant Jordan.
Defendant-appellant strenuously urges that the failure of the court to answer the questions presented by the jury constituted prejudicial error. The District Attorney, on the other hand, argues that the defendant-appellant could not possibly be prejudiced, since these questions were directed solely to the verdicts returnable against Jordan. But defendant-appellant, as well as Jordan, could have been convicted of felony murder. Further, there was some discussion of murder in the second degree, which could only be applicable to defendant- *156 appellant, and then to robbery. Hence, it is clear that the charge and the colloquy concerned the defendant-appellant.
After the jury have retired for deliberation, “ if they desire to be informed of a point of law arising in the cause * * * the information required must be given”. (Code Crim. Pro., § 427.) The statute does not vest the trial court with discretion as to whether or not he should answer a proper question (People v. Gonzalez, 293 N. Y. 259, 262), but “It is not the law * * * that any failure * * * to answer any question propounded by a jury must needs be reversible error. In each case, we must decide whether there was serious prejudice to the defendant’s rights.” (People v. Cooke, 292 N. Y. 185, 188; People v. La Marca, 3 N Y 2d 452, 461.)
The jury in this case, as the excerpt from the record cited above illustrates, was confused as to the elements of felony murder, of murder in the second degree, and the relation of the crimes of robbery and attempted robbery with these other crimes. These are serious questions for defendant’s life depended upon the jury’s proper understanding of the elements of each of these crimes. (People v. Flynn, 290 N. Y. 220.) Hence, it was the court’s duty to answer the questions, although they may have been imperfectly phrased. Indeed, the inartistic expression of these questions indicates an incomplete comprehension in the minds of the jury of the elements of the crimes involved. If the court did not understand the meaning of the questions, it was obliged to direct further inquiries to the jury to ascertain their difficulties. (People v. Gonzalez, supra, 262-263; People v. Gezzo, 307 N. Y. 385, 396-397.) Certainly a mere offer to reread the principal charge—although it was correct—would be of little help to a perplexed jury. If the jurors did not comprehend the original charge—and have asked for further instructions—it is unlikely that they would glean the resolution of their doubts as to the applicable law from a reiteration of that very same charge. (People v. Gonzalez, supra). This is s'o, even though the foreman later stated that it was not necessary to repeat the charge. (People v. Gezzo, supra.)
Since the trial court failed to answer or failed to answer adequately proper questions by the jury which seriously prejudiced defendant-appellant, a reversal must be had.
*157 As this case must go back for another trial, it would be useful to set forth another error which has occurred to prevent its recurrence at the retrial.
This error concerned the testimony of the brother of the deceased. He told of identifying the deceased at the morgue and then followed this series of questions:
“ Q. You knew the family of Joseph G-raber in his lifetime, didn’t you? A. Yes, sir.
Q. You had occasion to visit him in his house? A. Yes.
Q. Did he have a wife ? A. Yes, a wife and seven children.
Mr. Goldstein: I object to that.
The Court: Oh, no, I will permit it.
Mr. Brodsky: Objection.
The Court: I will permit it.
By Mr. Slutzky:
Q. A wife and what? A. Seven children.”
In People v. Caruso (246 N. Y. 437) the deceased’s wife testified that they were married but 18 months, and had one child, and that the deceased used to visit his child’s crib each evening and sing to the child. In reversing a conviction for murder in the first degree, we found that this sequence of testimony, which had no bearing on the materiality of the issues before the jury, was calculated to appeal to the passion and sympathy of the jury and, hence, unduly prejudiced the defendant.
The statements of the deceased’s brother here were also designed to achieve this same effect. This is clear by the insistence of the Assistant District Attorney, after the witness testified that deceased had a wife and seven children, to persist: “ A wife and what? A. Seven children.” There could be no purpose to this line of testimony but to conjure up in the minds of the jurors undue prejudice against the defendant.
The People, conceding that these remarks would be highly improper if the sole issue in the case were common-law murder in the first degree, argue that these remarks were pertinent since, under felony murder, the jury must consider not only the guilt of defendant, but must agree on a recommendation for leniency as well.
The People misconceive the function of a recommendation for leniency in felony murder verdicts under section 1045-a of the Penal Law. The enactment of this legislation, at the behest *158 of the Governor, was to avoid the problem of nullification — the refusal of jurors to convict upon a clear showing of facts, because in their estimation the penalty imposed upon conviction was entirely too severe. Under the statute, the jury now ‘ ‘ may in proper case ‘ fit its verdict to the varying degrees of moral guilt ’ ” by recommending life imprisonment when finding defendant guilty of murder in the first degree. (People v. Hicks, 287 N. Y. 165, 170.) Thus, it is the moral guilt of the defendant, not the moral goodness of the deceased, which governs the jury’s recommendation for leniency. The defendant’s degree of participation in the crime which resulted in the homicide (People v. Hicks, supra), his immaturity and youth (People v. Ray, 172 Misc. 1004, appeal dismissed 282 N. Y. 680, affd. 259 App. Div. 1065), his previous standing of good repute (People v. Smith, 163 Misc. 469) — these are some of the factors which enter into consideration of a recommendation of mercy. The moral goodness and family and personal relations of the deceased are not material considerations. While the crime may be more shocking because of the personal integrity of the victim, this cannot have any bearing on the defendant’s moral culpability.
Although there may be question as to the propriety of the District Attorney’s persistent cross-examination of the defendant on the subject of his involvement in a 1947 “stick-up” after receiving negative responses (cf. People v. Sorge, 301 N. Y. 198, 200-201; People v. McCormick, 303 N. Y. 403), no purpose is to be served by discussing this point in view of the presence of the serious and unquestionable errors of law treated above which require a reversal.
Accordingly, the judgment of conviction should be reversed, and a new trial ordered.