The People of the State of New York, Respondent, *v.* Vernon Joyner, Appellant.

First Department, June 24, 1969.

*John Nicholas Iannuzzi* for appellant.

*Lewis R. Friedman* of counsel (*Michael R. Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

McNally, J. The record, in the absence of prejudicial error, would sustain the verdict of defendant's guilt of felony murder. Appellant relies on several assignments of error, of which we find all but two without merit.

The evidence enabled the jury to find either that the killing was sequential to a robbery or attempted robbery, or that the killing preceded the robbery or its attempt. Defendant requested and was refused the charge " that if the jury believes the defendant assaulted the deceased, Hicks, and caused the death of the deceased, Hicks, but the intent to commit the felony did not arise until after the assault, that there can be no conviction on a felony murder ". Also, " that a felony must precede the homicide and the felony, or an intent to commit the felony, if it occurs after the assault, there can be no conviction for felony murder ", and " I request a charge that if there is a doubt as to whether or not the defendant intended to rob the deceased, and that that intention preceded the assault, that the jury must decide the doubt in favor of the defendant."

There was testimony that defendant, while the corpse lay on the sidewalk, took some change from the pocket of the deceased, explaining to the onlookers that it was owed to him by the dead man. The meaning to be ascribed to this ghoulish conduct came into question during consideration by the trial court of the jury's written request for an instruction. That request read: " Is a felony robbery committed if money is taken from a dead man? " The court replied: " The answer is yes. If a man or woman kills another for the purpose of robbing him, and in the course of robbing him, or after he has robbed him, in order to get away and retain whatever ill-gotten gains he had, any of those circumstances constitutes a felony murder." The difficulty with this answer is that it completely ignores the possibility that the jury might well have pondered whether defendant, without prior intent to commit the felony of robbery, had for the first time, following the stabbing, formed an intent to take the deceased's money. Were that the situation, the killing could not possibly have been deemed felony murder, whatever other form of homicide it might have been. The jury's concern with the sequence of the predicate felony and the killing is evidenced by the following question immediately after the additional instruction: " JUROR NO. 12: Your Honor, I think it might help the jury—it is necessarily for my own sake, but it might help if you could point out very clearly what distin-

guishes a first-degree felony murder and a first-degree manslaughter charge, and I would like to ask at the same time that you tell the jury whether or not it is possible to commit a first-degree manslaughter with felony.''

In the light of the foregoing, the jury was enabled to find the defendant guilty of a felony murder although the intent to commit the predicate felony may have followed the killing. It is clear that the felonious intent of the predicate felony must be contemporaneous with or precede the killing. (*People* v. *Wagner*, 245 N. Y. 143, 148–149; *People* v. *Moran*, 246 N. Y. 100.) Moreover, robbery requires the taking of property against one's will. (Former Penal Law, § 2120.) If the taking was after the killing, there is lacking the opposing will.

One other point is worthy of notice. The difficulty encountered in communication with the deaf-mute witness may be eliminated on retrial by advance notice of the problem. His testimony in the printed record is clear enough considering the difficulties encountered. The cross-examination does not appear to have been thwarted to any meaningful degree. Furthermore, the evidence is cumulative. The quality of interpretation was, therefore, in our opinion not prejudicial to defendant, but this possible threat to a fair trial should be obviated now that attention has been directed to it.

The judgment should be reversed on the law and a new trial directed.

NUNEZ, J. (concurring). I concur for reversal but would add another ground. Earl Hackett, Jr. is a deaf-mute. He testified through an interpreter who did not know the witness well enough to be familiar with all his signs. Indeed at one point when defense counsel asked the interpreter if the witness was communicating with him, the interpreter responded ''for the convenience of all, I have to fill in, try to make some sense.'' The record clearly shows many instances of either great difficulty or total incapacity of communication between the interpreter and the witness. As a result the witness, the *only* person who allegedly saw the appellant stab the deceased with a knife, gave unintelligent testimony and deprived appellant of meaningful cross-examination of the most damaging testimony against him. In the circumstances it was prejudicial error to permit the witness' testimony to stand.

BASTOW, J. (dissenting). There is overwhelming proof from several eyewitnesses that in the early evening of August 24, 1965, appellant stabbed and killed one Hicks on West 123rd Street. Shortly before, appellant had tried to borrow money

from one of his companions. When refused he remarked that "I am going to get some money one way or the other, if I have to kill somebody." Thereafter, appellant joined Hicks, an acquaintance who was passing. The two spoke, entered a basement and reappeared in 10 minutes. It was at this time that the several witnesses saw defendant strike Hicks who fell mortally wounded. Thereafter appellant was seen to take from Hicks' pocket the small amount of change he had been carrying.

Thus, in finality, the only substantial issue for the jury to resolve was whether the proof established that appellant caused Hicks' death while "engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise" (former Penal Law, § 1044, subd. 2).

The majority of the court concludes that reversible error was committed when the trial court in response to the question of the jury as to whether "a felony robbery [is] committed if money is taken from a dead man" answered in the affirmative with the following statement: "If a man or woman kills another for the purpose of robbing him, and in the course of robbing him, or after he has robbed him, in order to get away and retain whatever ill-gotten gains he had, any of those circumstances constitutes a felony murder. Is that clear?" The jurors by their silence evinced no interest in further elucidation on the subject. In this posture of the record it is submitted that the response of the court was a correct statement of the pertinent legal principle. (Cf. *People* v. *Wood,* 8 N Y 2d 48, 51.)

The majority, however, apparently finds reversible error because the trial court did not further specifically instruct the jury that if it were found that the intent to rob was formed after the stabbing, defendant could not be found guilty of a felony murder. "There is no doubt that if a jury requests additional information, the information required must be given [citing authorities]. It is not the law, however, that every failure to answer a question propounded by a jury gives rise to reversible error [citing authority]. In each case, we must examine if the failure to answer the jury's question gives rise to a serious prejudice to the defendant's rights [citing authorities]." (*People* v. *Jackson,* 20 N Y 2d 440, 454-455.)

Pertinent here to such an examination is exploration of the instructions of the trial court both before and after the jury's question had been asked and answered. In its main charge the court fully and precisely stated the legal principles applicable to a felony murder. It concluded with the statement that "Unless the defendant inflicted injuries which resulted in the death of Albert Hicks, while he was engaged in the felony of

robbery, or attempted robbery, or unless he slew Albert Hicks in an effort to commit the crime of robbery, or attempted robbery, he may not be convicted of murder in the first degree, as a felony murder ''.

Equally, if not more important, are the detailed instructions given the jury *after* the court had answered the question — the insufficiency of which the majority finds to have been reversible error. In concluding these instructions the court said: '' A felony murder is a homicide. That means it is a killing of a human being committed during the course of the commission of a felony. I told you that robbery, or attempted robbery, is a felony under our law. Now, I did give you quite some description with regard to the crime of robbery. Do you want me to give you that again? THE FOREMAN: No, we don't need that. THE COURT: Everybody seems to say ' No.' All right.''

In the light of these instructions and this exchange of words, it is difficult to understand how the jury could possibly have been misled into believing that appellant might have been convicted of a felony murder if the intent to commit the crime of robbery had been formulated after the stabbing. If confusion existed, however, it was dispelled by additional instructions to which reference will be made.

The majority opinion further quotes a question asked by juror number 12. The record disclosed that thereafter the court again defined a felony murder, common-law murder, murder second degree and manslaughter first degree, all of which covers some three pages in the record. If the shadow of a doubt remained as to the clarity of the instructions these were the closing words of the court: '' in the case of murder in the first degree as a felony murder, it is not necessary to intend to kill the victim, because the intention to commit the felony, the underlying felony of robbery or attempted robbery, is sufficient under the statute to take care of that gap, that need, you see? and the intent to commit the felony is transmitted over by virtue of the statute and it is made murder in the first degree as a felony murder, because, while he may not have intended to kill, he intended to commit a felony, in the course of which a man was killed. Now, does that make it clear to you? THE JURORS: Yes.''

The contention of appellant that these instructions misled the jury to believe that he could have been convicted of a felony murder although the intent to rob was formulated after the stabbing is without merit or substance.

Lastly, the testimony of Hackett, the deaf-mute, concededly presented problems to all participants in the trial. These problems were eventually surmounted and a new trial should not

be ordered with the hope that the next trial will present a more readable record. It is true that Hackett was the only witness who saw the knife in appellant's hand *prior* to the fatal blow. At least half a dozen witnesses, however, saw defendant strike Hicks and the latter fall to the pavement and die. One Hillery approached and saw appellant wiping the blade of the knife on the shirt of the dead or dying victim. Other witnesses saw the knife in defendant's hand *after* the stabbing.

I find no error but, if error there was, it was technical and not substantial and the judgment should be affirmed pursuant to the mandate of section 542 of the Code of Criminal Procedure.

McGivern, J. (concurring in dissent). I concur with the dissent. We have here all the ingredients of a classical felony murder. The defendant, a local " wino ", for the price of more drink, stabbed his victim, in cold blood, on August 24, 1965, before a crowd of witnesses, five of whom testified. Their testimony before the jury could not have been more graphic than if the killing had been enacted on television. The defendant, *before* the event, even announced his intent. There was no refutation of this crucial testimony. (*People* v. *Wise,* 163 N. Y. 440, 446, 447.) And the Trial Judge, in my opinion, repeatedly gave the basic formula of a felony murder.

The refinements which the majority assert the Trial Judge should have explicated for the jury make for an interesting dialectical exercise, but are unrealistic when applied to a defendant whose guilt is so overwhelming. The error urged by the majority must be sensibly viewed against the background of the crude facts of a sidewalk slaying. Whatever error there was, if any, was at best peripheral to the central issue of the defendant's guilt, could not possibly have affected that guilt and should be held beyond a reasonable doubt to be harmless. (*People* v. *Hagan,* 24 N Y 2d 395.)

Nor is there anything in the record to support the majority's hypothesis of a " ghoulish " stealing from a " corpse ". The premise collapses under the evidence. The medical examiner opined that the defendant after the stabbing " would die quickly. By quickly, I mean in minutes ". It did not take the defendant minutes before he went into his victim's pockets. And the witness Hillery said that at this time the victim was " gurgling ". " It was like he was trying to catch his breath." These facts are well within *People* v. *Hicks* (289 N. Y. 576) (the facts of which are set forth in an earlier opinion, 287 N. Y. 165) wherein the deceased was bludgeoned and stabbed before his money was taken from his cash register by the defendants.

If the majority is correct all an assailant need do is stab his victim, wait until he is anatomically dead, then steal his money. Such prescience will then be rewarded by less culpability than if he robbed and stabbed simultaneously.

As for the testimony of the deaf-mute, it was cumulative in any event, and as two members of the majority state, not sufficiently prejudicial to justify a new trial.

In short, I see no legal necessity for a new trial. The defendant got a fair trial. That is all he is entitled to. (*Bruton* v. *United States*, 391 U. S. 123, 135.)

MARKEWICH, J., concurs with McNALLY, J.; NUNEZ, J., concurs in opinion. McGIVERN, J. P., and BASTOW, J., dissent in separate opinions, each concurring with the other.

Judgment reversed, on the law, and a new trial directed.